**UNITED STATES, Appellee,**

v.

**Roger C. GINN, Sergeant,
U.S. Army, Appellant.**

No. 95–0033.
Crim.App. No. 9300190.

U.S. Court of Appeals for
the Armed Forces.

Argued April 8, 1997.

Decided Sept. 30, 1997.

Gierke, J., filed opinion concurring in part and in the result.

Crawford, J., filed opinion concurring in the result.

For Appellant: *Captain Patricia A. Harris* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Michael L. Walters,* and *Captain Norman R. Zamboni* (on brief); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker,* and *Major Roy H. Hewitt.*

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Captain Joanne P. Tetreault* (on brief); *Captain Anthony P. Nicasto.*

*Opinion of the Court .*

SULLIVAN, Judge:

On February 3, 1993, appellant was tried by a military judge sitting alone as a general court-martial at Fort Clayton, Panama. Pursuant to his pleas, he was found guilty of wrongful disposition of military property, sodomy, committing indecent acts with children (3 specifications), and taking indecent liberties with a child, in violation of Articles 108, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 908, 925, and 934, respectively. He was sentenced to a dishonorable discharge, 8 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. On May 20, 1993, the convening authority approved the sentence.

The Court of Military Review, now the Court of Criminal Appeals,[1] has issued several opinions in this case. On July 13, 1994, it set aside the findings of guilty to the indecent-liberties specification (*force* two male children to watch a pornographic video) on the basis that the Government did not adequately respond to appellant's claim of ineffective assistance of counsel. It reassessed the sentence, reduced confinement by 6 months but otherwise affirmed the remaining adjudged punishments. Unpub. op. at 3–4. On September 2, 1994, on reconsideration, that court (one judge was replaced) reversed its earlier decision and simply modified the finding of guilty to the indecent-liberties specification (*facilitate* the watching of a pornographic video by two male children) on the basis of insufficiency of evidence. Again, it

---

1. *See* 41 MJ 213, 229 n. * (1994).

reduced confinement by 6 months, but otherwise affirmed the approved sentence. Unpub. op. at 4–5. This Court set aside [2] the September decision of the Court of Criminal Appeals and remanded this case for further proceedings concerning appellant's post-trial claim of ineffective assistance of counsel. 43 MJ 471 (1996). The lower court subsequently affirmed the findings of guilty and the sentence [3] on June 27, 1996, making findings of fact based on the record of trial and post-trial submissions.

This Court granted review on the following specified issue on December 4, 1996:

> WHETHER THE COURT OF CRIMINAL APPEALS RESOLVED THIS CASE ON THE BASIS OF THE POST-TRIAL SUBMISSION OF COMPETING AFFIDAVITS FILED WITH SUCH COURT, AND, IF SO, WHETHER SUCH POST-TRIAL AFFIDAVITS CONSTITUTE A "RECORD" AS THAT TERM IS USED WITH RESPECT TO THE FACTFINDING POWERS OF THE COURT OF CRIMINAL APPEALS UNDER ARTICLE 66(c), UNIFORM CODE OF MILITARY JUSTICE, 10 USC § 866(c).

The substance of this complaint is that the service appellate court erred by finding facts on the basis of the record of trial and post-trial affidavits instead of ordering a factfinding hearing as authorized by *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

We hold that the Court of Criminal Appeals legally erred when it denied appellant's post-trial claim of ineffective assistance of counsel by making findings of facts partially based on post-trial submissions. *United States v. Walters*, 45 MJ 165, 167 (1996) (Cox, C.J., joined by Sentelle, J. (concurring in the result), and Sullivan, J. (dissenting));

*Daniels v. United States*, 54 F.3d 290, 295 (7th Cir.1995). Moreover, we conclude that appellant's guilty-plea responses do not "compellingly demonstrate" the invalidity of the factual allegations supporting his claim. *United States v. Perez*, 18 USCMA 24, 26, 39 CMR 24, 26 (1968); *see United States v. Giardino*, 797 F.2d 30 (1st Cir.1986). Nevertheless, we conclude that the lower court's factfinding error was harmless because appellant has not averred or shown sufficient prejudice to now warrant a factfinding hearing or any other appellate relief. *See Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also United States v. Lawson*, 40 MJ 475, 476 (CMA 1994).

Appellant was charged, *inter alia*, with taking indecent liberties with minor boys in violation of Article 134. Specification 3 of Charge III stated:

> SPECIFICATION 3: In that Sergeant Roger C. Ginn, U.S. Army, did, in the Republic of Panama, between 1 July and 31 August 1992, take indecent liberties with [CA] and [JC], two male children under 16 years of age, *by forcing them to watch a pornographic homemade videotape*, with intent to gratify the lust and sexual desires of ~~the said Sergeant Roger C. Ginn~~ [CA] **and** [JC].

(Italics added.) [Lined-through words were in original specification; bold language was added at trial (R. 42).]

He pleaded guilty to this offense. He also stipulated to the following facts concerning this offense:

> 5. Between 1 March and 31 August 1992, the accused picked up a female prostitute and took her to his house in Arraijan, Panama. The accused had the prostitute fellate him, and he engaged in

---

**2.** When this Court sets aside the decision of a Court of Criminal Appeals and remands for further consideration, we do not question the correctness of all that was done in the earlier opinion announcing that decision. All that is to be done on remand is for the court below to consider the matter which is the basis for the remand and then to add whatever discussion is deemed appropriate to dispose of that matter in the original opinion. The original decretal paragraph of the Court of Military Review's opinion of Sep-

tember 2, 1994, is not affected by the set-aside order unless resolution of the matter which is the subject of the remand dictates a different result. The amended opinion then becomes the decision which is subject to our review. This procedure does not permit or require starting the review process anew or setting aside action favorable towards an accused on other grounds. *See United States v. Hall*, 45 MJ 255, 257 (1996).

**3.** *See* n.2, *supra.*

multiple variations of sexual intercourse with her. After performing the above sexual acts and twice ejaculating upon the back of the prostitute, he solicited her to fellate him again. The accused video-taped the entire sexual encounter with a camera. *Sometime between 1 July and 31 August 1992, the accused showed the videotape to two 15-year-old boys, [JC] and [CA], at his house in Arraijan.* The accused did this with the intent to arouse the lust and sexual desire of the two boys.... 

(Emphasis added.)

Appellant discussed this offense with the military judge at his court-martial, as follows:

MJ: Okay,.... Specification 3 of Charge III. If you look at that, Sergeant Ginn, it's a little different from the other indecent acts charged, in that, there's no physical contact that's required in this because it's charged as indecent liberties instead of indecent acts. But, as I explained to you earlier, an indecent act and an indecent liberty basically means the same thing, in that they signify that form of immorality relating to sexual impurity, which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and depraved the morals with respect to sexual relations. Do you understand that?

ACC: Yes, sir.

MJ: Now, there are some additional elements to this offense though. There's a total of seven. First is that between 1 July and 31 August 1992, in the Republic of Panama, you committed a certain act by forcing [CA] and [JC] to watch a pornographic homemade videotape. Second, that at the time of the alleged acts, [CA] and [JC] were males under the age of 16 years. Third, that [CA] and [JC] were persons neither of whom were your spouse. Fourth, that the act admitted to the taking of indecent liberties with [CA] and [JC]. Fifth, that you committed the act with the intent to gratify your lust and sexual desires. Sixth, that you committed the act in the presence of these individuals, [CA] and [JC]. And finally, seventh, that under the circumstances, your conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Do you understand those elements?

ACC: Yes, sir.

MJ: Did you, in fact, show this videotape to these two individuals?

ACC: Yes, sir.

MJ: And the videotape we're talking about is what's been marked Prosecution Exhibit 2, and what was played earlier in this court?

ACC: Yes, sir.

MJ: And could you describe for me how this happened, who these individuals are, and where it occurred, when it occurred?

ACC: Yes, sir. It was at my house; they had come over to visit. We were watching TV and I asked them if they wanted to see a tape and they said, "Sure," and I played it.

MJ: Did you tell them what was on the tape?

ACC: Yes, sir.

MJ: And who are these individuals?

ACC: They are friends.

MJ: How old are they?

ACC: [CA] is 15, and [JC] is 15.

MJ: How did you know these individuals, if you did?

ACC: From just being around Fort Kobbe and Howard.

MJ: And why did you want to show this videotape to them?

ACC: I guess to arouse their lust, sir.

MJ: What about yours?

ACC: No, sir.

MJ: Okay, trial counsel, specification 3 says it was done with the intent to gratify the accused's lust and sexual desires. I notice that the stipulation also says it was done to gratify the boys' lust and sexual desires.

TC: Yes, Your Honor, I believe that by arousing the boys' lust that would satisfy the element of the crime. We could move to amend—to substitute those words into that specification.

MJ: Any objections from the defense to amend specification 3 to read, "with the intent to gratify the lust and sexual desires of [CA] and [JC]."

DC: No, Your Honor. Defense would think that would be appropriate.

MJ: Okay, specification 3 of Charge III is so amended.

MJ: Did they watch the entire videotape?

ACC: Yes, sir.

MJ: Did you tell them what was happening on the videotape or were there words—or was there conversation during the videotape between you and the boys?

ACC: No, sir. I let them watch it on their own.

MJ: Were you present at the time?

ACC: I was in the same room, sir.

MJ: And [C] and [J] were they—have they any relation to the military, family members?

ACC: Both of their parents are in the military.

MJ: Do you believe your actions on that date satisfy the elements of this offense?

ACC: Yes, sir.

MJ: And do you admit to me that such actions, showing a pornographic film or videotape to family members, *minor family members*, of fellow servicemembers, is conduct prejudicial or service discrediting conduct?

ACC: Yes, sir.

MJ: Any questions so far over anything we have covered?

ACC: No, sir.

The military judge accepted appellant's pleas of guilty and found him guilty of this offense as amended. At the then—Court of Military Review, appellant filed affidavits and other statements supporting his claim that his defense counsel provided him ineffective assistance of counsel by advising him to plead guilty to the above offense. The intermediate appellate court initially set aside appellant's conviction because the "Government did not deign to obtain a rebuttal affidavit from trial defense counsel." Unpub. op. at 3 (July 13, 1994). That court, at government request, reconsidered its decision and reversed itself, holding that "[t]here is *no credible evidence* to establish that the trial defense counsel should reasonably have believed that there was no factual basis for the appellant's guilty plea." Unpub. op. at 4 (Sept. 2, 1994) (emphasis added).

We set aside this decision by order dated January 22, 1996, and ordered:

That the decision of the United States Army Court of Military Review on reconsideration (now the Court of Criminal Appeals) is set aside; and that the record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals to determine: (1) the extent of defense counsel's knowledge concerning the allegations by appellant and by the father; (2) whether counsel suggested or otherwise implied that appellant lie in the guilty—plea inquiry; and (3) the validity of the assertion that exculpatory evidence was withheld from the defense. The court should obtain evidence from defense counsel, by affidavit, testimony, or stipulation, as deemed appropriate by that court, *see United States v. Lewis*, 42 MJ 1 (1995), as well as any other evidence it deems appropriate, concerning the matters being determined. After the court makes findings of fact and conclusions of law on these matters, it should reconsider Issues I and II raised by appellate defense counsel in the supplement to the petition for grant of review in light thereof.

43 MJ at 472.

The Court of Criminal Appeals gathered affidavits from defense counsel and trial counsel in this case. It then affirmed the findings of guilty and the sentence, stating:

After careful consideration, we are not persuaded by the appellant's assertion that a *DuBay* hearing is necessary to reliably resolve the factual issues before us. This is more than a battle of affidavits—we also have the appellant's sworn providence inquiry testimony to consider in determining the truth in this case.

*Upon consideration of the aforementioned affidavits and the entire record, we are satisfied using our Article 66, UCMJ,*

*fact-finding powers that:* (1) Though the defense counsel was aware of Sergeant First Class [A]'s assertion that the boys had watched the video on their own accord, the defense counsel was also informed by the appellant that the appellant recalled having been instrumental in showing a pornographic videotape to the young boys as alleged; appellant's sworn account of the incident made during the plea inquiry is substantially the same as he had recounted to his defense counsel before trial; (2) Appellant's trial defense counsel did not suggest or imply that the appellant lie in the guilty plea inquiry; and (3) No exculpatory evidence was withheld from the defense. Accordingly, we are satisfied that appellant's trial defense counsel was not ineffective in any respect, and that the appellant and his counsel were privy to all information in the possession of, or reasonably chargeable to, the government at the time of trial, and that the appellant's pleas were provident. No substantial right of the appellant was prejudiced in this case.

The findings of guilty and the sentence are affirmed.

Unpub. op. at 2 (June 27, 1996) (emphasis added).

### Introduction

The granted issue and the submitted briefs raise three questions of law concerning the Court of Criminal Appeals' denial of appellant's post-trial claim of ineffective assistance of counsel. First, appellant asks whether the Court of Criminal Appeals can resolve his claim against him on the basis of factfinding done on competing post-trial affidavits and the record of trial. Art. 66(c); *see United States v. Mason,* 45 MJ 483 (1997) (Court of Criminal Appeals cannot determine guilt of an accused using evidence not presented at trial). Second, assuming such factfinding was error, the Government asks whether the lower court's decision can nonetheless be sus-

tained on the basis that the record of trial "compellingly demonstrate[s]" the truth of defense counsel's affidavit rather than appellant's affidavit. *See Perez,* 18 USCMA at 26, 39 CMR at 26; *see also United States v. Johnson,* 43 MJ 192, 194 (1995) (Court of Criminal Appeals can deny post-trial claim of ineffective assistance of counsel without evidentiary hearing where "a sufficient basis" for denial exists). Finally, assuming the lower appellate court's factfinding was unauthorized and his factual allegations cannot be summarily rejected, we still must decide whether appellant was prejudiced by the lower court's improper factfinding. Art. 59(a), UCMJ, 10 USC § 859(a); *see Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203.

In addressing the above questions, it is first necessary to identify the particular nature of appellant's post-trial claim of ineffective assistance of counsel now before this Court. As noted above, this was a guilty-plea case, and appellant pleaded guilty and was found guilty of six specifications of violating military law. Before the now—Court of Criminal Appeals, appellant complained that his defense counsel coerced him to plead guilty to one of these specifications—the offense of taking indecent liberties—without properly investigating potentially exculpatory evidence. He also complained that the prosecution may have withheld potentially exculpatory evidence from him. *See United States v. Stephens,* 25 MJ 171, 174 (CMA 1987); *United States v. Sadler,* 16 MJ 982, 983 (ACMR 1983). To support these post-trial claims, he filed sworn affidavits from himself and Sergeant A, the father of one of his alleged victims, and a signed statement from CA, one of the alleged victims. The Government belatedly filed affidavits from defense counsel and trial counsel in response.

The appellate court below rejected the coercion complaint[4] and the claim that the

---

4. The Court of Criminal Appeals concluded that "[a]ppellant's trial defense counsel did not suggest or imply that the appellant lie in the guilty plea inquiry." Unpub. op. at 2 (1996). We have reviewed the affidavits of appellant and defense counsel on that question and find no

conflict of affidavits. Defense counsel agreed with appellant that "[m]y attorney advised my [sic] that to get the pretrial agreement I would have to convince the military judge that I had in fact shown the boys the video." Defense counsel also stated in his affidavit that he gave other

prosecution failed to turn over exculpatory evidence as being totally unsupported.[5] No factfinding was required to reject these claims. Accordingly, the remaining claim before this Court is that defense counsel was ineffective because he knowingly advised appellant to plead guilty to the indecent-liberties specification *without properly investigating available information which might establish his innocence of this offense.*

## I

### *Article 66(c) of the Uniform Code (1994)*

■ Article 66(c) was cited by the Court of Criminal Appeals as authority for its factfinding in this case, which was done at least partially on the basis of post-trial affidavits. It states:

> (c) In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. *In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.*

(Emphasis added.)

The above statutory language clearly indicates that Congress intended a Court of Criminal Appeals to act as factfinder in an appellate-review capacity and not in the first instance as a trial court. This unusual appellate-court-factfinding power is not unlimited in scope but is expressly couched in terms of a trial court's findings of guilty and its prior consideration of the evidence. A majority of

this Court recently expressed its support for a more limited construction of Article 66. *See Walters,* 45 MJ at 167 (Cox, C.J., joined by Sentelle, J., (concurring in the result) and Sullivan, J., (dissenting)). Moreover, several military legal scholars share this view. *See generally* Powers, *Fact Finding in the Courts of Military Review,* 44 Baylor L.Rev. 457, 480–81, and n. 2 (1992); H. Moyer, *Justice and The Military* § 2–780 (1972); Ghent, *Military Appellate Processes,* 10 Amer.Crim.L.Rev. 1, 125, 130 (1971). Finally, the conservative view of a service appellate court's factfinding power on collateral claims is entirely consistent with our repeated holdings that Article 66 does not authorize a Court of Criminal Appeals to determine innocence on the basis of evidence not presented at trial. *See United States v. Mason,* 45 MJ 483 (1997); *United States v. Parker,* 36 MJ 269, 272 (CMA 1993).

Of course, this construction of Article 66(c) does not mean that a Court of Criminal Appeals must ignore affidavits and order a factfinding hearing in all cases involving post-trial claims. *See Parker, supra* at 272 (affidavit has "role in triggering" *DuBay* process); *United States v. Lewis,* 42 MJ 1, 6 (1995) ("Court of Criminal Appeals has discretion ... to determine how additional evidence, when required, will be obtained, *e.g.,* by affidavits, interrogatories, or a factfinding hearing"). Discretion on how to initially proceed on these types of claims has generally been recognized as appropriate for civilian trial courts who entertain them. *See Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962); *United States v. McGill,* 11 F.3d 223, 225–26 (1st Cir.1993). The existence of discretion to consider affidavits on the need for a hearing, however, does not permit us to ignore the limitations on factfinding found in Article 66.

---

advice to appellant to the effect that he could not lie to the military judge. Appellant does not dispute this fact. *See Premachandra v. United States,* 101 F.3d 68, 69 (8th Cir.1996) (no conflict of fact where government affidavit adds additional facts unrebutted by appellant); *United States v. Morrison,* 98 F.3d 619, 622, 626 (D.C.Cir.1996) (evidentiary hearing properly denied where appellant asserts only that he did not remember consultation with counsel).

5. The Court of Criminal Appeals also found that "[n]o exculpatory evidence was withheld from the defense" and that "appellant and his counsel were privy to all information in the possession of, or reasonably chargeable to, the government at the time of trial...." Unpub. op. at 2 (1996). There is no conflicting affidavit before this Court or the Court of Criminal Appeals on these factual matters.

*Parker, supra* at 270; *United States v. Mays,* 33 MJ 455, 457 (CMA 1991) ("on the basis of the entire record"; "[i]n considering the record"); *see United States v. Healy,* 26 MJ 394, 396–97 (CMA 1988).

■ Finally, this Court has never held that Article 66(c) permits a Court of Criminal Appeals to exercise its factfinding power on conflicting post-trial affidavits and the record of trial. *See Parker, supra* at 272 (cases cited where evidence of record and affidavits show factfinding hearing necessary); *cf. Johnson,* 43 MJ at 195 (findings of fact may be made by *Court of Criminal Appeals where no conflict exists* between affidavits submitted by the parties). Moreover, our practice is entirely consistent with federal civilian practice which does not permit federal trial courts to make credibility determinations on the basis of conflicting affidavits to resolve collateral claims of ineffective assistance of counsel. *Daniels,* 54 F.3d at 295; *Castillo v. United States,* 34 F.3d 443, 445–46 (7th Cir.1994); *cf. Watts v. United States,* 841 F.2d 275, 277–78 (9th Cir.1988) (recognizes general rule but permits exception where inconsistent post-trial filings made by appellant). Accordingly, we conclude that Article 66(c) does not authorize a Court of Criminal Appeals to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties.

Turning to the present case, we note that the Court of Criminal Appeals expressly stated it was using its "factfinding powers" under Article 66. Moreover, it expressly stated that it considered the affidavits submitted by the parties in exercising its Article 66 powers. Finally, it expressly found as fact that "the defense counsel was also informed by the appellant that the appellant recalled having been instrumental in showing a pornographic videotape to the young boys as alleged." Under the principles of law delineated above, this was legal error under Article 66(c).

## II

### United States v. Perez

A second question raised in this case by the Government is whether the Court of Criminal Appeals' denial of appellant's post-trial claim can be otherwise sustained on the basis of this Court's decision in *Perez,* 18 USCMA at 26, 39 CMR at 26. The Government argues that, even assuming error by the lower court in making factfindings on appellant's post-trial claim, it could still lawfully be denied without ordering a factfinding hearing. It cites the *Perez* decision for the proposition that such a denial is proper where "the accuracy" of defense counsel's affidavit refuting appellant's claim is "compellingly demonstrate[d]" by the record of trial. *Id.; see Lewis,* 42 MJ at 6.

Long ago, Chief Judge Quinn commented on the problem of post-trial factual disputes and the unfairness of resolving them on the basis of post-trial affidavits. In writing for the Court in *United States v. Allen,* 8 USCMA 504, 508, 25 CMR 8, 12 (1957), he recognized the critical need for a post-trial factfinding hearing with receipt of evidence in a trial in lieu of reliance on affidavits. *See United States v. Hood,* 9 USCMA 558, 26 CMR 338 (1958). The need for resolving post-trial disputes based on affidavits greatly dissipated with the decision of this Court in *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967). Again, noting that appellate-court resolution of these claims on the basis of competing affidavits was not satisfactory, this Court in *DuBay* established a new trial-type procedure for factfinding on these post-trial claims. Finally, in *United States v. Perez, supra,* this Court specifically adopted this procedural approach for handling post-trial claims of ineffective assistance of counsel.

Nevertheless, this Court did not hold that a servicemember is always entitled to a factfinding hearing on his collateral claim. The *Perez* case also established a compelling-demonstration standard similar in part to the conclusive-demonstration test employed in civilian federal courts to determine whether an evidentiary hearing must be ordered for collateral claims raised under 28 USC § 2255. *See Daniels,* 54 F.3d at 293–94; *United States v. Nahodil,* 36 F.3d 323, 326–27 (3d

Cir.1994); *cf. United States v. Morrison,* 98 F.3d 619, 625–26 (D.C.Cir.1996)(no hearing required where allegations speculative); *Frazer v. United States,* 18 F.3d 778, 781 (9th Cir.1994) (recognizes no hearing required where allegations are "palpably incredible"). This Court held that a hearing need not be ordered where all the evidence before the factfinder "compellingly demonstrate[s] an accuracy of recollection by one as opposed to the other...." *Perez, supra* at 26; *see also United States v. Dykes,* 38 MJ 270, 272–73 (CMA 1993) (opinion of Sullivan, C.J., and Wiss, J.) ("A post-trial evidentiary hearing is not required if no reasonable person could view the opposing affidavits in this case, in light of the record of trial and find the facts averred by appellant to support his claim....").

### III

*Guilty Plea Cases and Ineffective–
Assistance–of–Counsel Claims*

■ The above-noted rule for ordering a post-trial evidentiary hearing is especially burdensome in a guilty-plea case where the effectiveness of counsel is attacked for the first time on appeal. In such a case an appellant is faced with a record of trial in which factual admissions were made with respect to the charged offenses, along with general concessions concerning his satisfaction with his defense counsel's performance. In our view, an appellate court must consider these admissions to determine whether a disputed issue of fact has been raised which requires that a *DuBay* hearing be ordered. *See United States v. Lawson,* 40 MJ 475, 476 (CMA 1994); *United States v. Espinoza,* 866 F.2d 1067, 1069–70 (9th Cir.1988); *see also United States v. Wilson,* 44 MJ 223, 225 (1996).

The general rule for ordering an evidentiary hearing on a post-trial claim raised in federal civilian courts is that a hearing is unnecessary when the post-trial claim "(1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case," *i.e.,* "they state conclusions instead of facts, contradict the record, or are 'inherent-

ly incredible.' " *McGill,* 11 F.3d at 226. As noted above, a guilty-plea record contains factual admissions with respect to guilt and additional concessions as to the satisfactory performance of counsel which cannot be ignored by the appellate court. *See generally Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). A civilian appellant is bound by those admissions unless he shows that this record casts no real light on his post-trial factual allegations or he provides a viable reason for departing from his earlier statements. *See Thomas v. United States,* 27 F.3d 321, 325 (8th Cir.1994); *Giardino,* 797 F.2d at 32.

Then–Circuit Judge Breyer applied this standard in the case of *United States v. Giardino, supra.* There, a convict asserted, in his post-trial motion under 28 USC § 2255, that his lawyer had lied to him that his co-accused had incriminated him. He also asserted that he would not have pleaded guilty absent that lie. The district court summarily dismissed his motion without an evidentiary hearing. The First Circuit reversed this decision on the basis that nothing in the record "*conclusively* contradicts" Giardino's factual allegations of "purported occurrences outside the" record, and his expressed satisfaction with his counsel occurred before he "found out what he says is the truth" about his attorney's conduct. 797 F.2d at 32 (emphasis added).

■ We hold that the same principles should be applied to determine whether a *DuBay* hearing is warranted in a guilty-plea case raising an ineffective-assistance-of-counsel claim. Such a hearing need not be ordered if an appellate court can conclude that "the motion and the files and records of the case ... conclusively show that [an appellant] is entitled to no relief." 797 F.2d at 32. In making such a judgment, the appellate court must consider whether the factual allegations supporting the claim contradict admissions made in the guilty-plea inquiry. It must also consider appellant's avowed satisfaction with his defense counsel. If a post-trial allegation of fact covers a matter within the record of the earlier plea and no reason is proffered for rejecting the earlier contrary

assertion by appellant, the allegation can be summarily rejected as inherently incredible, and no hearing need be ordered.

## IV

### Application in Appellant's Case

■ Turning to appellant's case, we must now apply the above principles to determine whether his post-trial claim of ineffective assistance of counsel was properly denied by the Court of Criminal Appeals. We initially note that the appellate court below did not deny appellant's claim by expressly relying on the compelling-demonstration test of *Perez, supra* at 26. Nevertheless, this is a legal question which we can decide on the basis of the record before us. *Cf. United States v. Johnson,* 43 MJ 192 (1995). Our particular inquiry is whether the record, including appellant's guilty-plea responses, clearly contradict his factual allegations on appeal and support defense counsel's version of the events in question.

We first must identify the material allegations of fact raised by appellant. *See United States v. Panitz,* 907 F.2d 1267, 1273–74 (1st Cir.1990); and *United States v. Simpson,* 436 F.2d 162, 164–65 (D.C.Cir.1970). We note that appellant has not generally alleged that his defense counsel was ineffective or that he failed to investigate some unknown witness for some unknown purpose. *See generally United States v. Butt,* 731 F.2d 75, 80 n. 5 (1st Cir.1984). Appellant particularly asserted in his affidavit that his defense counsel advised him to plead guilty without investigating Sergeant A's pretrial assertions concerning potentially exculpatory information. He specifically asserted that, prior to trial, Sergeant A told defense counsel that his son, an alleged victim, would exonerate appellant of the offense of showing the boys the pornographic video.

Defense counsel in his affidavit, of course, agreed that Sergeant A informed him of this potentially exculpatory evidence prior to entry of appellant's pleas. No factfinding hearing was warranted on this part of appellant's factual allegations. However, defense counsel also asserted that no further investigation was done *because appellant previously ad-* *mitted to counsel that he committed this offense as he later did to the military judge.* Appellant disputed this fact. He said that *he told defense counsel that he did not remember committing this offense and he only told the military judge the contrary because of defense counsel's assurances as to the strength of the prosecution's case.* This is the factual dispute at issue in this case.

This factual dispute also was "material" to resolution of appellant's post-trial claim of ineffective assistance of counsel by the Court of Criminal Appeals. *See McGill,* 11 F.3d at 225 (applying material-facts standard). To succeed on his legal claim, appellant was required to show that his defense counsel's performance in failing to investigate Sergeant A's information "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *see United States v. Kauffman,* 109 F.3d 186, 191 (3d Cir.1997). To show such defective performance, appellant averred that he had earlier told his counsel that he could not remember committing this offense and thus counsel was on notice of his possible innocence and the need to test the Government's proof. *Strickland, supra* at 691, 104 S.Ct. at 2066 (reasonableness of counsel's action may be determined or substantially influenced by defendant's own statement or action); *Langford v. Day,* 102 F.3d 1551, 1557 (9th Cir. 1996); *Hadley v. Groose,* 97 F.3d 1131, 1135 (8th Cir.1996). To rebut this showing of unreasonableness, the Government offered defense counsel's conflicting affidavit which stated that appellant's pretrial admissions were his reason for doing no further investigation in this case. *See generally Guinan v. United States,* 6 F.3d 468, 473 (7th Cir.1993) (Easterbrook, J., concurring). Since the Court of Criminal Appeals accepted defense counsel's version of the facts and expressly denied appellant's claim on this basis, this dispute was clearly a matter material to its decision. *See Lewis v. Mazurkiewicz,* 915 F.2d 106, 113–15 (3d Cir.1990); *United States v. Popoola,* 881 F.2d 811, 813 (9th Cir.1989).

Finally, we conclude that appellant's material factual allegations were not inherently incredible and that they cannot be summarily rejected because they were directly contradicted by his guilty-plea responses. *See United States v. Giardino, supra.* His ineffectiveness claims rest on his assertion that he told his lawyer that he did not remember committing the pornographic-videotape offense with the minor boys but that he later was misled by his counsel to admitting it. This assertion is not inherently unreasonable or self-contradictory. Moreover, what he initially told his lawyer and what his lawyer told him and his resulting state of mind were not matters specifically covered in the plea inquiry. *Id.* Assuming that his standard guilty-plea responses on counsel satisfaction are viewed as an implied concession on this point (*see Nguyen v. United States,* 114 F.3d 699, 702 (8th Cir.1997)), he also offered a valid reason for his relief from this concession. *Cf. Butt,* 731 F.2d at 81 (no reason offered). He asserted that it was only after his trial that Sergeant A told him about the disclosures to defense counsel and his inaction. *See United States v. Giardino, supra.* Accordingly, we conclude that the record before us does not "compellingly demonstrate" the accuracy of defense counsel's version of these events over appellant's. *Giardino,* 797 F.2d at 32.

## V

### *Harmless Error*

■ The final question to be addressed in this case is whether the Court of Criminal Appeals' unauthorized factfinding actually prejudiced appellant in this case. Art. 59(a); *see also Cobbett v. United States,* 43 F.3d 395 (8th Cir.1994). As noted above, we have

concluded that the lower court's findings of fact contributed in a material way to its denial of appellant's claim of ineffective assistance of counsel. Nevertheless, we have further reviewed appellant's claim in light of the entire record before us and conclude that its proper resolution did not require a factfinding hearing to resolve the above noted factual dispute.[6] As the Supreme Court stated in *Hill,* 474 U.S. at 60, 106 S.Ct. at 371 ("Because petitioner .... failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test, the [court below] did not err in declining to hold a hearing on petitioner's ineffective assistance of counsel claim.").

This was a guilty-plea case and the Supreme Court has spoken to the type of prejudice resulting from defective-attorney performance which is required to set aside this type of plea. In *Hill, supra* at 58–60, 106 S.Ct. at 370–71, the Supreme Court said:

We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra* [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)], and *McMann v. Richardson, supra* [397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable

---

6. Our conclusion today does not undermine our earlier decision to remand this case to the Court of Criminal Appeals to secure responses from defense counsel and trial counsel. That action was accomplished in the interests of justice, in particular, because of the serious nature of the attorney misconduct and fraud on the court alleged by appellant. *See generally United States v. Johnson,* 42 MJ 443, 444 (1995); *United States v. Payton,* 23 MJ 379 (CMA 1987). In addition, the Court of Criminal Appeals based its September

1994 decision on its power to determine the reliability of a military accused's post-trial complaint of ineffectiveness of counsel even if uncontroverted by a government affidavit. *See United States v. Butt,* 731 F.2d 75, 80 n. 5 (1st Cir.1984)(suggesting an "independent-corroboration" requirement); *but see United States v. Tyler,* 34 MJ 293, 295 (CMA 1992); *United States v. McGillis,* 27 MJ 462 (CMA 1988). The legal sufficiency of appellant's particular complaint of failure to investigate was not raised at the time of our earlier decision.

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. *For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.* Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer,* 742 F.2d 371, 375 (C.A.7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington, supra,* these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.,* [466 U.S.,] at 695[, 104 S.Ct., at 2068].

(Footnote omitted; emphasis added.)

Turning to appellant's post-trial complaint of ineffective assistance of counsel, we find that nowhere does he state that he would have changed his plea in this case. *See Hill v. Lockhart, supra.* His conclusory argument that "prejudice is clear" from his counsel's defective performance is legally inadequate. Assignment of Errors at 11 (Feb. 94); Supplement to Petition at 11 (Dec. 94); *see Barker v. United States,* 7 F.3d 629, 633

(7th Cir.1993) ("mere allegation" that defendant "would have insisted on going to trial is insufficient" under *Lockhart*); *Key v. United States,* 806 F.2d 133, 138–39 (7th Cir.1986). More importantly, he has not alleged and the record does not show that there *was a reasonable probability* that he would have changed his plea to not guilty if his defense counsel had properly investigated Sergeant A's statements to him. *Mangum v. Hargett,* 67 F.3d 80, 84 (5th Cir.1995); *see also United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir.1996). The record of trial in this case and the post-trial submissions contrarily demonstrate that even if defense counsel had interviewed CA, as suggested by his father, Sergeant A, there was no reasonable probability that appellant's guilty plea would change.

In this regard, we note that appellant stands guilty before this Court of taking indecent liberties with children "by facilitating" the showing of a homemade pornographic video to CA and JC. There is no dispute in the affidavits or in the providence inquiry that appellant made this pornographic video of himself with a Panamanian prostitute; that he kept this video at his house; and that the two boys watched this video at his house. The post-trial statement of CA proffered by the defense states only that "no pornographic video was *physically* shown to myself and my friend by Sgt Ginn." (Emphasis added.) This statement does not exonerate appellant of the modified offense of "facilitation" and, in view of appellant's concessions noted above, it is substantially consistent with his guilt of the modified specification of this offense. Accordingly, we conclude that there is no reasonably probability in this case that appellant would have changed his guilty plea to taking indecent liberties with a child even if defense counsel had questioned CA. *Hill v. Lockhart, supra; see Mazurkiewicz,* 915 F.2d at 115 (decision not to interview not prejudicial where information would not have led to different result at trial); *cf. Kauffman,* 109 F.3d at 191 (prejudice established where crucial evidence on an affirmative defense not produced as result of counsel's error).

### Conclusion

■■■■ In sum, a post-trial evidentiary hearing was not required in this case and is not required in any case simply because an affidavit is submitted by an appellant. In most instances in which an appellant files an affidavit in the Court of Criminal Appeals making a claim such as ineffective assistance of counsel at trial, the authority of the Court to decide that legal issue without further proceedings should be clear. The following principles apply:

First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

Finally, we further note that appellant has suggested at various times throughout his brief that these post-trial affidavits and the alleged victim's post-trial statement create reasonable doubt about his guilt of the indecent-liberties offense and the other offenses for which he was convicted. *The question before us, however, is the competence of his defense counsel.* This is a guilty-plea case and he may not use his post-trial affidavit or anyone else's to contradict his guilty plea and his sworn admissions of the facts supporting them. *See United States v. Wilson*, 44 MJ 223 (1996).

At appellant's court-martial, he pleaded guilty to the offense of taking indecent liberties by showing the minor boys his pornographic video. He was questioned by the military judge about this offense and admitted sufficient facts to warrant the finding of guilty. Accordingly, we will not now invalidate his guilty plea on the basis of post-trial speculation or innuendo as to his guilt (*United States v. Harrison*, 26 MJ 474 (CMA 1988)) or permit him to use his complaint of ineffective assistance of counsel to indirectly accomplish the same result (*United States v. Lawson*, 40 MJ 475 (CMA 1994)). *See* RCM 910(j), Manual for Courts–Martial, United States, 1984 ("any objection" as to "factual issue of guilt" waived by plea of guilty).

The decision of the United States Army Court of Criminal Appeals, which is construed as affirming specification 3 of Charge III as modified by excepting the words "forcing them to watch" and substituting therefor the words "facilitating their watching of"; the remaining findings of guilty; and the approved sentence except for confinement in excess of 90 months are affirmed.

Chief Judge COX and Judge EFFRON concur.

GIERKE, Judge (concurring in part and in the result):

I agree with the majority that appellant is not entitled to a factfinding hearing on his claims of ineffective assistance of counsel. I disagree with the legal standard used by the majority. The majority would grant appellant a hearing unless the record conclusively contradicts his affidavit. I believe that the correct standard would deny appellant a hearing unless he can overcome the presumption of verity accorded his sworn responses on the record. *See Blackledge v. Allison,* 431 U.S. 63, 71, 74, 97 S.Ct. 1621, 1627–28, 1629, 52 L.Ed.2d 136 (1977).

In my view the result reached by the court below is consistent with prevailing federal practice. Therefore, I need not address the question whether Article 66, Uniform Code of Military Justice, 10 USC § 866 (1994), grants a Court of Criminal Appeals greater factfinding power than civilian appellate courts, by giving them power to resolve questions of fact on collateral issues raised for the first time on appeal, without resort to a factfinding hearing.

In his post-trial affidavit, appellant asserts that he told his defense counsel that he "honestly did not recall" showing the videotape to the two underage boys. At trial appellant responded under oath to the military judge's questioning by telling the military judge, "We were watching TV and I asked them if they wanted to see a tape and they said, 'Sure,' and I played it." Appellant also stipulated that he "showed the videotape to" the two boys. Upon questioning by the military judge, appellant declared under oath that the stipulation was true. Defense counsel's affidavit asserts that appellant "did remember the incident and wanted to plead guilty to it," and that his description of the incident was "substantially the same as he made to the military judge during the providency inquiry." The only significant differences among the record of trial and the two affidavits are on the question whether appellant told his defense counsel that he did not remember the incident. Appellant's post-trial assertion that he did not remember the incident is inconsistent with his detailed sworn respons-

es during the plea inquiry, and it is the only point on which appellant's affidavit directly contradicts defense counsel's affidavit.

In his affidavit appellant also asserts that his defense counsel told him that he had to convince the judge that he showed the boys the tape. Defense counsel agrees that he gave appellant that advice. Defense counsel, however, emphatically asserts that he did not advise appellant to lie. Appellant stops short of asserting that he was advised to lie, saying, "I decided that maybe I just didn't remember the incident and plead guilty to the charge." I agree with the majority that there is no significant conflict on this point.

Next, appellant asserts that after the trial, he informed his defense counsel that Sergeant First Class (SFC) A told him that his son had related that the boys "had played the video themselves and that [appellant] was not in the area." Defense counsel states that before trial, SFC A had told him "something to this affect [sic]" and that "the boys had watched the video on their own accord." Both appellant's and defense counsel's affidavits are consistent in that they relate that the decision to plead guilty was based on the boys' statements to criminal investigators. Neither of these affidavits are inconsistent with the Court of Criminal Appeals' finding that appellant was guilty of "facilitating their watching of a pornographic homemade video tape." Unpub. op. on reconsideration at 5. Neither affidavit mentions whether defense counsel and appellant discussed the uncertainty of the boys' testimony before appellant decided to plead guilty.

Finally, appellant has submitted affidavits from SFC A and his son. The son states that "no pornographic video was physically shown to myself and my friend by SGT Ginn." SFC A's affidavit asserts that his son denied accusing appellant of showing them a pornographic videotape. At trial, however, SFC A admitted that his son told him that "he was shown a video." Defense counsel's affidavit states that SFC A suggested that the Criminal Investigation Command (CID) may have "coerced" the boys into accusing appellant. Appellant's affidavit admits that he was aware that the boys had told CID

that he had shown them the video and that, "understanding that the boys made statements concerning such an event, I decided that maybe I just didn't remember the incident and plead guilty to the charge." There is no substantial conflict among these affidavits. What they reflect is the possibility that the boys might have recanted their CID statements if the case had been contested, but there is no assertion by appellant and no evidence that defense counsel misled appellant about the evidence against him or coerced him to plead guilty. Appellant does not assert that he would not have pleaded guilty if he had known that the boys might recant. *Cf. United States v. Giardino,* 797 F.2d 30, 32 (1st Cir.1986).

Turning next to the applicable legal standard, I believe that the majority opinion gives inadequate weight to the "presumption of verity" accorded to a plea inquiry and the heavy burden placed on an appellant who seeks to use post-trial affidavits to impeach sworn testimony during a plea inquiry. During the plea inquiry, appellant admitted under oath that he showed the pornographic videotape to the two boys. He did not assert any lack of memory. To the contrary, he described the event in considerable detail. Appellant is now trying to overturn his conviction by contradicting his admissions of guilt during the plea inquiry.

In *United States v. Lawson,* 40 MJ 475, 476 (CMA 1994), this Court held that we will not permit an accused "to impeach his provident guilty pleas by a collateral attack of his conviction through the guise of attacking his trial defense counsel." In *United States v. Wilson,* 44 MJ 223, 225 (1996), this Court held that "[n]either post-trial speculation nor post-trial affidavits as to putative defenses are a proper basis to upset guilty pleas prefaced by a providence inquiry appearing to be regular on its face." (Citations omitted.) In my view, these recent decisions from our Court are controlling. The majority *sub silentio* overturns these two decisions by permitting appellant to impeach his guilty plea merely by asserting that he told his defense counsel that he did not remember committing an offense that he later admitted committing when questioned under oath by the military judge. *See* 47 MJ at 245.

*Lawson* and *Wilson* are consistent with the practice in federal district courts. In *Blackledge,* 431 U.S. at 73–74, 97 S.Ct. at 1628–29, the Supreme Court observed that representations made by the parties at a plea inquiry under Fed.R.Crim.P. 11, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier" to overturning the guilty plea "in any subsequent collateral proceedings." The Supreme Court remarked that "[s]olemn declarations in open court carry a strong presumption of verity." The prevailing federal rule is that a defendant who claims that guilty pleas were the product of ineffective representation must overcome the presumption that statements made during the Rule 11 plea inquiry are truthful. Furthermore, "the presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt,* 731 F.2d 75, 80 (1st Cir.1984). Finally, a defendant will be granted an evidentiary hearing "only when the allegations [of attorney misrepresentation] were highly specific and usually accompanied by some independent corroboration." *Id.* at n. 5; *see also United States v. Sanderson,* 595 F.2d 1021, 1022 (5th Cir.1979) (defendant entitled to hearing where he offered "specific factual allegations supported by the affidavit of a reliable third person").

In my view, appellant's affidavit raises no issues that merit a hearing. He does not assert that his defense counsel deceived him, coerced him, or failed to investigate his case. His affidavit lacks the "highly specific" factual allegations required to trigger further factual inquiry. Appellant does not assert his innocence or that his responses during the plea inquiry were false. He also does not assert that he would have pleaded not guilty if he had known the facts. The post-trial affidavits of SFC A and his son suggest a possibility that his son might recant his pretrial statement, but that possibility does not

entitle appellant to repudiate his sworn testimony and guilty plea in order to explore that possibility. As eloquently stated by the Court of Appeals for the D.C. Circuit:

> Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act" which is "accepted only with care and discernment."

*United States v. Barker*, 514 F.2d 208, 221 (1975), citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970).

The majority relies heavily on *United States v. Giardino*, 797 F.2d 30, 31 (1st Cir. 1986). In my view *Giardino* is not applicable to appellant's case. Giardino pleaded guilty to aiding and abetting a drug transaction. In a post-trial affidavit, Giardino asserted that his lawyer lied by telling him that his coactor had made statements incriminating him, when in fact the coactor had claimed that Giardino was "an innocent bystander" instead of an aider and abettor. Giardino's statements during the Rule 11 plea inquiry were consistent with his guilt as an aider and abettor, but they also were consistent with his assertion that he was an innocent bystander.

When *Giardino* was decided, the First Circuit had already recognized the presumption that statements made on the record during a plea inquiry are truthful. *See Butt*, 731 F.2d at 80. The *Giardino* decision, however, was unaffected by the presumption of verity, because Giardino's post-trial claims were consistent with his sworn responses during his Rule 11 hearing. Accordingly, there was no

presumption of verity to overcome. Furthermore, Giardino's claims were "highly specific" and corroborated. *See United States v. Butt, supra.*

In my view, the *Giardino* standard relied upon by the majority applies only where the post-trial affidavits are not inconsistent with the record. Where, as in this case, appellant has made sworn responses on the record that are inconsistent with his post-trial affidavits, appellant has the burden of overcoming the presumption of verity. In my view he has not overcome that presumption in this case.

On this appellate record, I believe that the Court of Criminal Appeals acted consistently with prevailing federal law and the precedents of this Court when it rejected appellant's claims without ordering a factfinding hearing. Accordingly, I would hold that the Court of Criminal Appeals did not err by resolving appellant's allegations on the basis of affidavits and the record of trial.

CRAWFORD, Judge (concurring in the result):

The issue of whether to order a post-trial hearing requires a delicate balancing of interests. On the one hand, a court must consider the interests in procedural regularity and the finality of judgments. Against these, a court must also weigh the interest in ensuring that defendants are afforded their constitutional rights. A post-trial hearing should be required where (1) a substantial issue is revealed through affidavits; (2) the issue could not have been discovered through the exercise of due diligence; and (3) failure to conduct the hearing would undermine the court's confidence in the determination of guilt or the sentence.

There are a number of exceptions to requiring a post-trial hearing.* One of the

---

* *See, e.g., United States v. Morrison*, 98 F.3d 619, 625–26 (D.C.Cir.1996)(holding facts that are inherently incredible or speculative do not warrant post-trial hearing and appellant was not prejudiced by attorney's conduct); *United States v. McGill*, 11 F.3d 223, 226 (1st Cir.1993)(holding appellant made "no serious challenge" to facts); *United States v. Butt*, 731 F.2d 75, 77 (1st Cir.1984)(denying post-trial hearing because sworn testimony on "record conclusively contra-

dicts" defendant's allegations); and *United States v. Parman*, 461 F.2d 1203, 1205 (D.C.Cir.1971)(holding allegations by appellant clearly inconsistent with record of trial). *See also Machibroda v. United States*, 368 U.S. 487, 494–95, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962)(stating that "[t]he factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, related primarily to pur-

exceptions, applied by the majority, is the harmless-error doctrine. *Cf. United States v. Simpson*, 436 F.2d 162, 164–66 (D.C.Cir. 1970). I agree with its application in this case.

ported occurrences outside the courtroom and upon which the record could, therefore, cast no real light.'').